**UNITED STATES BANKRUPTCY COURT**
**NORTHISN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE<br><br>STEPHEN C FALKNER,<br><br>DEBTOR. | CASE NO. 25-BK-09387<br>CHAPTER 13<br><br>HON. DONALD R. CASSLING<br><br>HEARING DATE: SEPT. 25, 2025<br>HEARING TIME: 10:00 A.M. |

**CITY OF CHICAGO'S OBJECTION TO**
**<u>PLAN CONFIRMATION</u>**

The Debtor's proposed plan uses his disposable income to pay his attorneys' fees as administrative expenses. This means that nothing will go towards paying down his unsecured debts, including those owed to the City (this is a 0% plan). But a significant amount from those payments will go into his attorneys' pockets. Statistics reveal that the majority of chapter 13 cases fail well before distributions to unsecured creditors begin. This means debtors with plans such as this one are then left with no debt relief (or actually owing more money) and they are out the thousands of dollars their attorneys took from the plan payments. Such a plan cannot be confirmed over the City's objection.

Under § 1325(b)(1)(B), if an unsecured creditor such as the City objects, then the plan cannot be confirmed unless it provides that all the debtor's projected disposable income during the applicable commitment period, here the first three years, will be paid to *unsecured creditors*, and no one else, beginning with the first plan payment. *See* 11 U.S.C. § 1325(b)(1)(B). The Debtor's plan proposes to use his projected disposable income to pay his attorneys' administrative expenses while using none to pay his

— 1 —

unsecured creditors. The Debtor's attorneys are not unsecured creditors and the statutory text, case law, and legislative history confirm this. Confirmation must be denied because the plan fails to satisfy the confirmation requirements.

## I. <u>BACKGROUND</u>

The Debtor filed a petition under chapter 13 of title 11 of the United States Code on June 20, 2025. *See* Pet'n, Dkt. No. 1. On that date, he owed the City $6,510.90 in unsecured debt for Municipal Code violations. *See* Claim 3-1. He also filed his Form 122C-1 stating his "current monthly income," as defined by § 101(10A), was below median. *See* Form 122C-1, Dkt. No. 4. This means his applicable commitment period, *i.e.*, the minimum length of his plan, is three years. *See* 11 U.S.C. § 1325(b)(4).

The Debtor's Schedule I provides that his net monthly income is $3,826.77 and Schedule J provides his monthly expenses are $3,001.00. *See* Sched. I; J, Dkt. No. 1. This leaves $825.77 per month left over. *See id.* The Debtor has filed an amended plan providing that he will devote that $825.00 to make plan payments for 36 months.[1] *See* Plan, § 2.1, Dkt. No. 19. But none of that will go to pay unsecured creditors. *See id.* at § 5.1. Instead, the plan provides that $615.82 per month will pay for his vehicle. *See id.* § 3.3. This leaves $209.18 per month in disposable income that will be paid toward his attorneys' administrative expenses (and trustee's fees) until the entire attorneys' fee is paid. Only after that would anything go to unsecured creditors.

---

[1] The City does not dispute the Debtor's calculation of his current monthly income as provided in Form 122C-1, nor does it dispute the expenses the Debtor has asserted are reasonable under § 1325(b)(2).

— 2 —

## II. <u>ARGUMENT</u>

The Debtor's proposed plan fails to meet the requirements for confirmation over an unsecured creditor's objection under § 1325(b)(1)(B). In 2005, through the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Congress added three words to § 1325(b)(1)(B) — "to unsecured creditors." Before BAPCPA, the section's only limitation on the use of projected disposable income was that it be used to "make payments under the plan[.]" Therefore, disposable income could go to anyone, including to administrative expense holders. However, the section now requires that "all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments *to unsecured creditors* under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added). This amendment is admirably clear. A debtor must calculate his "projected disposable income" and then that amount must "be applied to make payments to unsecured creditors" during the "applicable commitment period" starting with the very first payment. *See id.* The Debtor's proposed plan fails to meet this requirement.

### A. **The Debtor's disposable income calculation does not include attorneys' fees.**

The first step to determine whether the Debtor's plan is confirmable over the City's objection is to determine his projected disposable income. The projected disposable income calculation starts with the calculation of the Debtor's "current monthly income" ("CMI"). *See* 11 U.S.C. § 101(10A); *see also, In re Forbish*, 414 B.R. 400, 402 (Bankr. N.D. Ill. 2009) (Goldgar, J.). CMI is "calculated by averaging the debtor's

monthly income during … the six full months preceding the filing of the bankruptcy petition." *Id.*; 11 U.S.C. § 101(10A). All chapter 13 debtors must complete Official Form 122C-1 at the outset of the case providing their CMI. *See In re Forbish*, 414 B.R. at 402 (discussing the predecessor to Form 122C-1). Here, the Debtor provided on his Form 122C-1 that his current monthly income made his a below-median debtor. *See* Dkt. No. 4.

The Debtor's CMI is then used to determine his "applicable commitment period," that is, how long his plan must run. *See* 11 U.S.C. § 1325(b)(4). Generally, a debtor that has a CMI that is above the median for the state has an applicable commitment period of five years, while below-median debtors generally have an applicable commitment period of three years. *See id.* Here, the Debtor's CMI is below median and therefore his applicable commitment period is three years. *See* Dkt. No. 4.

The Debtor's CMI is then used to determine "disposable income" by reducing CMI by reasonable expenses for "the debtor's maintenance and support." *Hamilton v. Lanning*, 560 U.S. 505, 510 (2010); 11 U.S.C. § 1325(b)(2). Reasonable expenses for maintenance and support of an above-median debtor, *i.e.*, those that generally have an applicable commitment period of five years, are governed by the means-test in § 707(b). *See* 11 U.S.C. § 1325(b)(3). For below-median debtors, reasonable expenses are governed by Schedule J. *See, e.g., In re Forbish*, 414 B.R. at 402; *In re Farrar-Johnson*, 353 B.R. 224, 228 n.5 (Bankr. N.D. Ill. 2006) (Goldgar, J.). Although the tests to determine expenses that may be deducted from a debtor's current monthly income to arrive at a debtor's disposable income are different for above- and below-

— 4 —

median income debtors, neither test allows the debtor's attorneys' fees to be included in that calculation.

For above-median debtors, not directly applicable here, § 707(b) provides that the chapter 13 trustee's fees may be deducted from current monthly income to arrive at the disposable income amount. *See* 11 U.S.C. § 707(b)(2)(A)(ii)(III). However, no other administrative expenses, including the debtor's attorney's fees, may be deducted out.[2] *See In re Sadler*, 378 B.R. 780, 788 (Bankr. E.D. Tex. 2007) (Section 707(b)(2)(A)(ii)(III) is only referring to chapter 13 trustee fees set by the U.S. Trustee's Office). As retired Judge Wedoff has noted, "No similar deduction is specified for debtor's attorney's fees, and so it is likely that a deduction for such fees—or any other hypothetical priority claims—would be denied under the maxim *expressio unius est exclusio alterius.*" Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 273 (2005).

Form 122C-2, required for above-median debtors, also makes the point that attorney's fees may not be deducted from CMI when calculating disposable income. Form 122C-2 is used to calculate disposable income under the standards set by § 707(b). *See In re Briscoe*, 374 B.R. 1, 14 (Bankr. D.D.C. 2007). Consistent with the clear text of § 707(b), Form 122C-2 only provides an administrative expense deduction for the chapter 13 trustee's fee, as set by the U.S. Trustee's office. *See* Form 122C-2, ¶ 36. There is no deduction for the attorney's administrative expenses. *Id.* Therefore, the

---

[2] It makes sense for the trustee's fees to be deducted out of the disposable income analysis in all cases because the trustee "shall collect such percentage fee from all payments received[.]" 28 U.S.C. 586(e)(2).

— 5 —

debtor's attorney's fees may not be subtracted from CMI to arrive at a debtor's disposable income in an above-median case. The same is true for a below-median debtor.

For a below-median debtor, such as the Debtor here, instead of using Form 122C-2 to claim expenses, Schedule J continues to govern. *See In re Forbish*, 414 B.R. at 402; *In re Farrar-Johnson*, 353 B.R. at 228 n.5; *In re Briscoe*, 374 B.R. at 14. And like Official Form 122C-2, Schedule J does not provide a line to deduct the debtor's attorneys' fees.[3] Again, like Form 122C-2, this is because it follows the text of the Code. "Accordingly, attorney's fees do not constitute expenses reasonably necessary to the debtor or his dependents' support or maintenance and will not be considered" when calculating disposable income. *In re Metzger*, 232 B.R. 658, 664 (Bankr. E.D. Va. 1999). Instead, prior to the 2005 amendment, "[w]hen a debtor calculates disposable income in chapter 13, debts such as attorney's fees are not taken into consideration, as they are to be paid off through the administration of the estate with the disposable income calculated." *Id.* After 2005, however, all disposable income must go to unsecured creditors, but that doesn't transform attorney's fees into expenses necessary for a debtor's maintenance and support. The fees of a debtor's bankruptcy attorney are simply not maintenance and support of a debtor or his dependents, no matter the debtor's income level. The debtor's attorney's fees cannot be subtracted from the CMI

---

[3] Schedule J does not include expenses that are directly taken out of a debtor's paycheck, such as income taxes, Medicare, Social Security, union dues, insurance, *etc.*, collectively referred to as "payroll deductions." *See* Sched. I, ¶¶ 5-6; *see also In re Forbish,* 414 B.R. at 404 (noting this as well). But there certainly is no line to deduct the debtor's attorney's fees on Schedule I either. A debtor's attorney's fees are just not part of the disposable income calculation.

— 6 —

to calculate disposable income.

In this case, the Debtor is below median, so Schedule J governs the calculation of his disposable income. At the bottom of Schedule J, the Debtor asserted he had $825.00 available after paying expenses each month. *See* Sched. J, ¶ 23b. The Debtor failed to list his vehicle payment on Schedule J, but put that in his plan for $615.82, leaving $209.18 in disposable income. *See id.* A debtor's "projected disposable income" is the same thing as a debtor's "disposable income" in most cases and will only vary "where significant changes in a debtor's financial circumstances are known or virtually certain" to occur. *See Lanning*, 560 U.S. at 513. This case falls within that vast majority.[4] Therefore, the Debtor's projected disposable income under § 1325(b)(1)(B) is $209.18 per month. The plan then must provide for that amount to go to unsecured creditors each month.

## B. The Debtor's attorneys are not "unsecured creditors" that may be paid with disposable income.

Because the Debtor's attorneys' fees may not be deducted from current monthly income to determine the Debtor's disposable income, the question becomes: Is the Debtor's attorney an "unsecured creditor" that may be paid with disposable income? The answer is "No." A debtor's attorneys are not "creditors," nor are they "unsecured creditors" as used in § 1325(b).

---

[4] The Debtor has not alleged any known or certain changes so the definition of "disposable income" and "projected disposable income" are the same thing in this case. *See* Sched. I, ¶ 13; Sched. J, ¶ 24; Dkt. No. 1. ("Do you expect an increase or decrease…[in income or expenses]," answering "no.").

### *1. Administrative expense holders are not "creditors" under the plain text of the Code.*

The Debtor's attorneys are not creditors under the Code because they do not have a prepetition claim against the Debtor. A "creditor" is an entity that has a prepetition "claim" against the debtor, or an entity that has a certain type of post-petition claim against the estate that was incurred while the case is pending. *See* 11 U.S.C. § 101(10). In other words, "[§]101(10) defines 'creditor' in terms that include only holders of prepetition claims (and certain postpetition claims deemed to be prepetition claims) and not holders of postpetition claims for administrative expenses under section 503." *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 429 (2d Cir. 2009). This is because administrative expenses "are entitled to distinct treatment separate and apart from pre-petition, or deemed pre-petition, creditor claims" and, therefore, there is an "exclusion of administrative claim holders from the definition of 'creditor.'" *Id., citing Camelot Music, Inc. v. MHW Adver. & Pub. Relations, Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141, 158 (Bankr. D. Del. 2000); *see also, Beasley Forest Prod., Inc. v. Durango Ga. Paper Co. (In re Durango Ga. Paper Co.)*, 297 B.R. 326, 329–31 (Bankr. S.D. Ga. 2003); *In re Lids Corp.*, 260 B.R. 680, 683–84 (Bankr. D. Del. 2001); *In re marchFirst, Inc.*, 448 B.R. 499, 508 (Bankr. N.D. Ill. 2011) (Goldgar, J.) ("an administrative expense request is not a 'claim' and so is 'not properly asserted in a proof of claim'"). An administrative expense holder, such as a Debtor's attorney, is not a creditor at all.

The Federal Rules of Bankruptcy Procedure highlight this necessary conclusion that a holder of an administrative expense for attorneys' fees is not a creditor. Rule

3002(a) expressly provides that an "*unsecured creditor* or equity security holder must file a proof of claim or interest for the claim or interest *to be allowed*[.]" *See* Fed. R. Bankr. P. 3002(a) (emphasis added).[5] Therefore, if the Debtor's attorneys were "unsecured creditors" then they would have to file a proof of claim for their fees to be allowed and paid. *Id.* But attorneys do not file proofs of claim to be paid. They follow the procedures under § 503 and Rule 9014 because they are not unsecured creditors, but instead are holders of administrative expenses who may move for payment from the estate. *See In re marchFirst, Inc.*, 448 B.R. at 508; *In re Pro Set, Inc.,* 193 B.R. 812, 815 (Bankr. N.D. Tex. 1996); *In re Durango Georgia Paper Co.,* 297 B.R. at 329; *In re Atcall, Inc.*, 284 B.R. 791, 799 (Bankr. E.D. Va. 2002); *see also,* Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy*, § 10.07 (6th ed. 2022) ("The attorney does not file a proof of claim for such services; rather, the attorney files a request for the allowance of an administrative expense."). Thus, the Debtor's attorneys are not "creditors" under the Code and cannot be "unsecured creditors" that may be paid from the Debtor's disposable income over the objection of an unsecured creditor or the trustee.

## 2. *Statutory History Overwhelmingly Supports this Plain Reading of § 1325(b)(1)(B).*

In 2005, Congress added the three words "to unsecured creditors" to § 1328(b)(1)(B). Prior to that time, all disposable income merely had to be used to "make payments under the plan." Congress, however, added these three words

---

[5] In case there was any uncertainty, a term defined by the Bankruptcy Code has the same meaning in the Bankruptcy Rules. *See* Fed. R. Bankr. P. 9001.

— 9 —

intentionally, and the Court must give them effect. It is a well-worn canon of construction that the legislature "does not waste its time with the enactment of superfluous statutes, nor does it conserve its time by unnecessarily tinkering with statutes interpreted to its satisfaction by the Courts." *Lennon v. Immigration & Naturalization Serv.*, 527 F.2d 187, 192 n. 9 (2d Cir. 1975); *see also, Colautti v. Franklin*, 439 U.S. 379, 392 (1979) (it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.").

While the plain language of § 1325(b) provides that all disposable income must be applied to pay unsecured creditors, and only unsecured creditors, the statutory history of that requirement supports the consequential effect of barring attorneys' fees from being paid out of disposable income.

While the amendment to § 1325(b) was being debated, then-Senator Russ Feingold proposed to strike it. 151 Cong. Rec. S2316 (daily ed. Mar. 9, 2005) (statement of Sen. Feingold), attached as **Exhibit A**. From the floor of the Senate, Feingold asserted that the amendment to § 1325(b) requiring all disposable income to be applied to unsecured creditors could impair the ability of attorneys to get paid. He first noted that under the law prior to 2005, disposable income was used to pay "administrative expenses, secured creditors and unsecured creditors." *Id.* He lamented that "[a]s written, section 102(h) of this bill [amending § 1325(b)] would instead require that for debtors who are below median income, all disposable income must go to unsecured creditors, and none could be used for secured debts or administrative

expenses."[6] *Id.*

Specifically, Senator Feingold saw the "problem created by this [section as having] to do with administrative expenses in chapter 13 cases … [that] include the fees for lawyers[.]" *Id.* The section "*would prohibit any payments at all for administrative expenses* for debtors below the median." *Id.* (emphasis added). Feingold feared no attorneys would handle chapter 13 cases at all and proposed a substitute that would have "allow[ed] administrative expenses, including attorneys' fees to be including in the plan payments." *Id.* But that proposal was rejected and the additional protection for unsecured creditors stayed in BAPCPA as passed.

Additionally, bills nearly identical to BAPCPA were introduced in Congress in 2001 and 2003 with the same additional proposed protection for unsecured creditors in § 1325(b). *See* H.R. Rep. No. 107-3, at 247 (2001); H.R. Rep. No. 108-40, at 9 (2003). In 2003, members of the House Judiciary Committee pointedly asked the U.S. Trustee's Office to weigh in on the additional protections the amendment to § 1325(b) would provide to unsecured creditors, asking:

> Sec. 102(h) of the bill [amending § 1325(b)] provides that if a debtor cannot provide for the payment in full of an allowed unsecured claim, then the debtor must devote all of his disposable income in the first three years of the plan to make payments to unsecured creditors. Under current law, a debtor must show that he will pay all his disposable income in the first three years of the plan to pay any kinds of debt.

---

[6] The concern for secured creditors was misguided, because many secured debts are paid as maintenance and support, and subtracted from CMI to determine disposable income in cases of above-median debtors, *see* 11 U.S.C. § 707(b)(2)(A)(iii), and accounted for on Schedule J for below-median debtors. Thus, secured debt payments and arrears on those debts are already subtracted from CMI to get to the disposable income amount. The Debtor can pay those without running afoul of § 1325(b).

— 11 —

*Bankruptcy Abuse Prevention and Consumer Protection Act of 2003, and the Need for Bankruptcy Reform: Hearing before the Subcomm. on Comm'l and Admin. Law of the H. Comm. on the Judiciary,* 108th Cong. 154-58 (2003) (emphasis and spacing added), at 162-63, attached as **Exhibit B**. The Committee asked directly:

> Do you believe that *non-priority unsecured debts* should be given this special new advantage to the detriment of the other[s] … ?

*Id.* (emphasis and spacing added). The U.S. Trustee's Office responded that it "has no position on the provisions of Sec. 102(h) [of the bill] pertaining to payment of debts under a chapter 13 plan." *Id.* at 163.

Congress was therefore acutely aware of the additional protection it was providing to unsecured creditors when it amended the Code in 2005 and it intended the consequential effects. When statutory history shows that Congress was aware of an amendment and its impact, the courts should give effect to that intent. *See Lamie v. U.S. Trustee,* 540 U.S. 526, 541 (2004) ("The House passed the Act after having the deletion, as well as its impact, called to its attention."). The text Congress chose here is clear. All disposable income must now go to unsecured creditors and may not be funneled into attorneys' pockets.

**C. The 2005 amendment of § 1325 protects chapter 13 debtors.**

The only basis for holding that an attorney's administrative expenses are unsecured claims is a policy argument properly left to Congress. Some may argue, along with Feingold, that if all disposable income must go to unsecured creditors, then attorneys would simply not handle chapter 13 cases because they couldn't get paid. But the exact same argument was made in response to an amendment to the way chapter

7 attorneys were paid under § 330, and that argument failed at the Supreme Court for many of the same reasons provided here. *See Lamie,* 540 U.S. at 526-41.

In 1994, Congress amended the Code to provide that debtors' attorneys may not be paid out of the estate in chapter 7 cases. *See id.* Attorneys lamented that this could kill chapter 7 practice because there would be no way to pay for their services. But contrary to the overstatement of gloom, the 1994 amendment did not eviscerate chapter 7. Nor does this amendment eviscerate chapter 13. The solution here is that attorneys' fees must be paid up front, with non-disposable income, or outside of the applicable commitment period. *See, e.g., Lamie,* 540 U.S. at 537 (making similar suggestions in chapter 7 cases after the 1994 amendment). But they may not be paid with disposable income during the commitment period.

Ultimately, the lasting effect of the *Lamie* decision was not to decimate chapter 7 practice. Instead, it appears to have created a perverse incentive for attorneys to steer their clients into chapter 13 cases with higher fees and to have those fees paid through the plan before anyone else. However, "no money down" chapter 13 cases create a problem of their own. "Like other types of lending to cash-strapped individuals, 'no money down' bankruptcy effectively is a 'buy now, pay later' scheme." Pamela Foohey, *et al.*, *"No Money Down" Bankruptcy*, 90 S. Cal. L. Rev. 1055, 1101 (2017). These debtors "may have difficulties understanding and, thus, balancing the benefits of essentially taking a loan from their attorneys against the benefits of waiting to save up or borrow enough cash to pay attorneys' fees and file under [chapter 7 instead]." *Id.* Chapter 13 discharge rates are abysmal when compared to chapter 7.

Therefore, the chapter choice will likely decide whether the debtor receives a discharge or not. So, when people "file chapter 13 when a chapter 7 case may be legally preferable, a 'no money down' bankruptcy is, at best, inefficient, and at worst, a grave social harm." *Id.* at 1060.

Congress has already provided that solution to this problem by amending § 1325(b) to remove the financial incentive attorneys have to usher debtors toward chapter 13, when chapter 7 might be a better option. *See id.* at 1105. When an unsecured creditor or the trustee objects, the plan cannot be confirmed unless it pays only unsecured creditors with the Debtor's "projected disposable income." This levels the playing field for debtors to choose which chapter is best for them.

But ultimately, any "argument about what makes for good public policy should be directed to Congress; the judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior." *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1127–28 (7th Cir. 2003). This Court cannot write-out the 2005 amendment of § 1325(b) simply because there may be policy arguments for doing so. And, as provided, Congress was aware of these arguments, and likely the countervailing arguments, and made the decision to amend § 1325(b) to require all disposable income to go only to unsecured creditors. In the instant case, not all the Debtor's disposable income is going to unsecured creditors during the applicable commitment period. Therefore, the plan may not be confirmed over the City's objection.

### III. <u>CONCLUSION</u>

The City respectfully requests that this Court sustain its objection and deny confirmation of the proposed chapter 13 plan. The plan uses the Debtor's projected

— 14 —

disposable income during the applicable commitment period to pay attorneys, and not unsecured creditors. This payment scheme for attorney's fees is not allowed under § 1325(b)(1)(B), and so the plan must be denied.

<table>
<tr><td>Dated: September 17, 2025</td><td>Respectfully Submitted,<br>**CITY OF CHICAGO**<br><br>Mary B. Richardson-Lowry<br>Corporation Counsel<br><br>By: /s/ Jaime Dowell<br>Assistant Corporation Counsel</td></tr>
</table>

David Paul Holtkamp (ARDC# 6298815)
Deputy Corporation Counsel
Jaime Dowell (ARDC# 6281312)
Assistant Corporation Counsel
City of Chicago Department of Law
121 North La Salle Street, Suite 400
Chicago, Illinois 60602
312.744.6967
David.Holtkamp2@cityofchicago.org
Jaime.Dowell@cityofchicago.org

## CERTIFICATE OF SERVICE

I, Jaime Dowell, an attorney, hereby certify that on September 17, 2025, I caused a copy of the attached Objection to Confirmation to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List.

/s/   Jaime Dowell
Assistant Corporation Counsel

## SERVICE LIST

**Registrants**
(Via CM/ECF)

| | |
|---|---|
| Brittni Hayes | bhayes@semradlaw.com |
| Mitchell Shanks | mshanks@semradlaw.com |
| Thomas H. Hooper | Thomas.h.hooper@chicagoch13.com |
| Adam G. Brief | ustpregion11.es.ecf@usdoj.gov |